# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

MICHAEL SHANNON, )
)
    Plaintiff, )
)
v. )
) CV417-041
NANCY A. BERRYHILL, )
Acting Commissioner of )
Social Security, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Michael Shannon seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB).

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id*. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id*. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2015) (footnote added).

## II. ANALYSIS

Shannon, who was 43 years old when his DIB claim was denied, alleges disability beginning October 3, 2009. Tr. 26, 54-55, 213-21. He has a high school education and past work experience as a stock clerk and cement finisher. *Id.* at 34; 76. After a hearing, the ALJ issued an unfavorable decision. *Id.* at 23-36. He found that plaintiff's anxiety disorder constituted a severe impairment but did not meet or medically equal a Listing. *Id.* at 26-27. Based on the evidence of record, the ALJ found that he retained the RFC for the full range of work, except that he is limited "to avoiding ordinary hazards in the workplace" and "performing simple routine and repetitive tasks but not at production rate pace," and is capable of only "occasional interaction with co-workers, supervisors, and the public." Tr. 27.

With these restrictions, the ALJ determined Shannon was capable of performing the requirements of representative occupations such as dining room attendant, counter supply worker, and cleaner/housekeeping, all unskilled work with an SVP[2] of 2. Tr. 35. Hence, plaintiff was not

---

[2]   Specific Vocational Preparation (SVP) is the amount of lapsed time required by a

disabled.  *Id.* at 35-36.  Shannon disagrees, arguing that the ALJ erred in his evaluation of the medical evidence.  Doc. 11 at 10-20.

### A.   Dr. Eisenberg's Opinion

As the Commissioner concedes, the ALJ misstated the GAF score assigned by Dr. Seth Eisenberg.  Doc. 12 at 11; *see* tr. at 30.  Dr. Eisenberg assigned plaintiff a GAF[3] score of 42, diagnosed him with PTSD and bipolar disorder, prescribed Prozac and Seroquel to treat his anxiety and depression symptoms, and advised Shannon to take his medication and continue with therapy.  Tr. 30 & 34; *see* tr. 372-75.  The ALJ, meanwhile, incorrectly cited a GAF score of 65, and thus described Dr. Eisenberg's opinion as endorsing only "mild mental limitations."  Tr. 30-31.

The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be

---

typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, App. C.

[3]   The Global Assessment of Functioning (GAF) scale score is a numeric scale (1 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults.  Diagnostic and Statistical Manual of Mental Disorders IV, American Psychiatric Association (4th ed. 2000) at 34.

particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 32-34. A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. DSM-IV-TR 34. But the "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

Indeed, in the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) (5th ed. 2013), "[i]t was recommended that the GAF be dropped from DSM-5" entirely, due to "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." DSM-5 at 16. The Social Security Administration itself cautions that an individual's "GAF score is never dispositive of impairment severity." Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22, 2013), REV (Oct. 14, 2014). In other words, plaintiff's GAF score of 42, by itself, was not dispositive of

his mental RFC without further explication to support such a serious score. *Id.* at § E (because a GAF rating is only a "snapshot," it "does not provide a reliable longitudinal picture of the claimant's functioning for a disability analysis" unless the clinician "clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies."). And plaintiff points to no specific limitations in Dr. Eisenberg's opinion that would endorse that score or support additional functional restrictions on his mental capacity.[4] *See* docs. 11 & 13. Given that the GAF score alone would not have altered the ALJ's functional capacity analysis and nothing else in Dr. Eisenberg's opinion would have imposed additional limitations beyond those already captured by the RFC assessment, any misstatement in transcribing the GAF score was ultimately harmless.

---

[4] In his reply brief, Shannon argues that Dr. Eisenberg's opined "serious limitations" would have impacted the ALJ's ultimate RFC analysis. Doc. 13 at 3. However, it is unclear just what those "limitations" were -- Dr. Eisenberg observed plaintiff's reported symptoms and history, diagnosed him with the severe impairments of PTSD and depression, and prescribed medications to treat those impairments, but imposed *no* functional limitations. Tr. 372-75. Beyond merely concluding that it must, plaintiff has not demonstrated that more fully crediting Dr. Eisenberg's opinion would have meaningfully altered the ALJ's RFC assessment.

B.  **Ms. Farnum's Opinion**

Nurse Practitioner Marsha Farnum completed a Mental Residual Functional Capacity Assessment in September 2014, noting diagnoses of bipolar disorder and PTSD, assigning a GAF score of 55, and noting a litany of mild, moderate, and marked limitations in his ability to concentrate, socialize, and deal with stress.  Tr. 725-28.  Plaintiff contends the ALJ failed to meaningfully consider Ms. Farnum's opinion on his impairments as a primary treating source.  Doc. 11 & 13.

But nurse practitioners are not "acceptable medical sources" under the regulations, *see* 20 C.F.R. § 416.913(a) ("acceptable medical sources" include physicians, psychologists, and other medical professionals"), and are thus their opinions are not accorded the same consideration.  SSR[5] 06-03, p7; 20 C.F.R. §§ 404.1513(d) & 416.913(d).  Because they are not acceptable medical sources, nurses' testimony is weighed the same as any other lay witness.  *McBride v. Berryhill*, 2017 WL 2313008, at *4 (S.D. Ga. Apr. 21, 2017); *Carter v. Colvin*, 2017 WL 360926 at *1 n. 1 (S.D. Ga.

---

[5]   Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1).  SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

Jan. 3, 2017). And all that is required of an ALJ regarding non-medical source evidence is that the evidence be considered. *See* 20 C.F.R. §§ 416.926, 416.926a, 416.927, 416.929. The ALJ need only provide "arguably germane reasons" for dismissing the testimony, even if he does "not clearly link [his] determination to those reasons." *Carter*, 2017 WL 360926 at *2 (quoting *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) and *Cole v. Comm'r of Soc. Sec.*, 2012 WL 4077233 at *4 (M.D. Fla. Sept. 17, 2012)).

Here, the Commissioner concedes the ALJ omitted any reference or discussion of Ms. Farnum's September 2014 mental RFC assessment. Doc. 12 at 14; *see* tr. 32 (referring only to Ms. Farnum's 2011 notes). The Commissioner argues, however, that Ms. Farnum's 2014 assessment "do[es] not relate back to the relevant period" as it was completed "nearly four years after plaintiff's date last insured." *Id*. While plaintiff is correct that Ms. Farnum, having treated plaintiff for several years, would likely have a longitudinal view of his condition (and any decline in his functioning), there is no indication in her 2014 assessment that her opinion reached back to plaintiff's date last insured. Indeed, Shannon first saw Licensed Professional Counselor Jo Miller in August 2010 and

8

Dr. Eisenberg in mid-September 2010 (prior to his date last insured of September 30, 2010), but did not treat with Ms. Farnum until January 2011 (after his date last insured). Tr. 368-86; 501-64; 725-27; 783-838; *see* tr. 32. Her opinion therefore -- even while supporting that his assertion of a progressive worsening of his condition extending *past* his date last insured -- cannot reach back to his condition as of his date last insured in any way that is not conjectural. *See Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 941 (11th Cir. 2014). The ALJ's error in failing to explicitly address Mr. Farnum's opinion, therefore, is harmless to the ultimate finding that plaintiff was not disabled during the relevant period *prior* to his date last insured.[6]

---

[6]   Plaintiff generally disputes the ALJ's consideration of medical evidence gathered after his date last insured.  It is undisputed that Shannon's date of onset is October 3, 2009 (when he was assaulted) and his date last insured was September 30, 2010 (one year later).  Tr. 26; *see* 20 C.F.R. § 404.1571 *et seq.*  It was thus his burden to establish disability during the relevant period (the 12 months) in between those dates.

  Plaintiff contends that the ALJ erred by disregarding his post-date-last-insured medical records, including Dr. Daniel Schere's diagnoses of post-concussion syndrome and chronic post-traumatic headaches.  Doc. 11 at 19-20; *see* tr. 487-88.  But, as he admits, diagnoses alone do not establish functional limitations.  *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself.").  Rather, plaintiff conclusorily asserts that the ALJ should have determined whether any post-relevant-period medical evidence "supports greater work-related limitations due to [plaintiff's] impairment and ongoing problems" than those already encompassed in his RFC assessment to establish disability *before* his date last insured.  Doc. 13 at 9.  But the ALJ's duty is not to receive diagnoses, invent functional limitations, and then theorize about their onset date.  And plaintiff points

### C. Dr. Eaton's Opinion

Consultative mental examiner Dr. Marc Eaton opined that plaintiff was chronically depressed and anxious, had mild memory difficulties, was able to understand and execute simple instructions, would find interacting with the public, supervisors, and coworkers "exceedingly challenging" and sustaining focused attention difficult, and may decompensate under stress. Tr. 361-66. Plaintiff argues that the ALJ accorded Dr. Eaton's opinion "significant weight" but failed to elucidate how Dr. Eaton's opined limitations on interpersonal contact, stress, and attention were reflected in his RFC assessment that plaintiff could perform "simple routine and repetitive tasks but not at production rate pace" and "have occasional interaction with coworkers, supervisors and the public." Doc. 11 at 14; *see* tr. 27. Particularly so, he argues, given that the Vocational Expert (VE) had testified that an individual unable to have any contact with supervisors, coworkers, and the public would not be capable of competitive work. *See* tr. 80.

But that testimony was based on plaintiff's own definition of the

---

to nothing in particular to demonstrate that the post-date-last-insured medical evidence would demonstrate functional limitations beyond those already incorporated into the ALJ's RFC assessment *during the relevant period*. *See* docs. 11 & 13.

phrase "exceedingly challenging," *not* Dr. Eaton's. *See* tr. 79-80 (counsel agreed that he was "suggesting" that the hypothetical individual posed to the VE could "never" have contact with supervisors, coworkers, or the public). And even then, the ALJ need not adopt every limitation assessed by a credited medical source, nor must his RFC assessment mirror the opinion of every doctor. *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (an ALJ's decision also need not address every limitation included in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and the plaintiff's condition as a whole); 20 C.F.R. §§ 404.1527(b), (c); 416.927(b), (c). The ALJ did not err by crediting Dr. Eaton's opinion and, after taking into account the record as a whole, addressing that opinion by imposing an attention and stress limitation to only simple, routine, and repetitive tasks at a non-production pace, and a contact limitation to only occasional contact with coworkers, supervisors, and the public. *See* tr. 27. Plaintiff simply has not pointed to any additional limitation endorsed in the record.[7]

---

[7] In addition, the ALJ's hypothetical to the VE exceeded his RFC assessment, imposing social limitations to only occasional interaction with supervisors and coworkers and "*never*" working with the public. Tr. 76. The VE identified three jobs

Indeed, plaintiff reports attending church, visiting with family, and sustaining relationships (including having roommates), indicating he retains the capacity to tolerate and interact with other folks more often than "never." *See* tr. 361 & 365 (opining plaintiff is not "grossly antisocial"); 376-77 ("has several friends in his church"). He repeatedly testified that he had difficulties with crowds and large groups, but did not testify to being unable to interact one-on-one or with small groupings of people he knew (*e.g.*, doctors, lawyers, family members). *See* tr. 62-74; 376-77. Shannon also repeatedly declined the ALJ's offer to take a break, demonstrating his capacity for calm, lucid, interaction with someone in a position of authority in a stressful situation. *See id.*

---

(dining room attendant, counter supply worker, and cleaner/housekeeper), tr. 77, which the ALJ then cited as representative jobs plaintiff could perform in the national economy. Tr. 35. To the extent his RFC assessment failed to fully accommodate a prohibition on interaction with the public, the ALJ's hypothetical to the VE explicitly included that limitation. Tr. 76. That detail overcomes any deficiency in the ALJ's assessment of plaintiff's mental RFC. *See Olsen v. Astrue*, 858 F. Supp. 2d 1306, 1319 (M.D. Fla. 2012).

It is true that when plaintiff's counsel modified the hypothetical to the VE to include prohibitions on working with "groups of people . . . even if not directly interacting with them" and working with "supervisors, coworkers, or the public," the VE affirmed that the three jobs would be precluded. Tr. 79-80. But again, plaintiff cannot show in the record where these specific restrictions arise. He points to no accepted medical source who opined that plaintiff is unable to work with others, either individually or in groups. Only Dr. Eaton opined that he might be limited in his ability to work with others, and even then only that he would be "exceedingly challenged" in doing so -- not prohibited. And, as discussed above, plaintiff's own testimony contradicts a prohibition on any social contact whatsoever in the workplace.

Finally, despite his moderate difficulties maintaining concentration, persistence, or pace (tr. 26), it is undisputed that Shannon is able to understand and execute simple instructions without difficulty, *see* tr. 366, and perform his activities of daily living without incident, *see* tr. 71-74. The ALJ's limitation to unskilled jobs requiring only simple, routine, and repetitive tasks at a non-production pace (tr. 35 & 76-77) thus adequately captured Shannon's ability to maintain focus and deal with stress. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011). Shannon has not demonstrated otherwise.

### III.  CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the

assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __2nd__ day of February, 2018.

*/s/ JR Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA