FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2019 FEB 1 AM 10: 32
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MICHAEL SHANNON,  )
　)
　Plaintiff,  )
　)
v.  )
　)  CASE NO. CV417-041
Nancy A. BERRYHILL, Acting  )
Commissioner of Social  )
Security,  )
　)
　Defendant.  )
　)

# O R D E R

Before the Court is the Magistrate Judge's Report and Recommendation (Doc. 16), to which objections have been filed (Doc. 17). After a careful review of the record, the Court does not fully concur with the Magistrate Judge's Report and Recommendation, which recommends that this Court affirm the decision of the Social Security Commissioner ("the Commissioner") and, therefore, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's report and recommendation. The Court **ADOPTS IN PART** that portion of the Report and Recommendation which found that the ALJ's treatment of Ms. Farnum's opinion was harmless error, that the ALJ did not err in his treatment of Dr. Eaton's opinion, and that the ALJ did not err in his treatment of Plaintiff's post-date-last-insured medical

records. (Doc. 16 at 7-13.) However, the Court **DECLINES TO ADOPT** the portion of the Magistrate Judge's report and recommendation that found the misstatement of Plaintiff's GAF score from Dr. Eisenberg was harmless error and does not require remand. Accordingly, this case is **REVERSED** and **REMANDED** to the Social Security Administration for further consideration. The reasons for the Court's decision are set forth below.

## ANALYSIS

I. <u>STANDARD OF REVIEW</u>

Judicial review of social security cases is limited to the question of whether the agency's factual findings are supported by "substantial evidence" and whether the correct legal standards were applied. <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005); <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is something "more than a mere scintilla, but less than a preponderance." <u>Dyer</u>, 395 F.3d at 1210. If a decision is supported by substantial evidence, a reviewing court must affirm the decision "even if the proof preponderates against it." <u>Id.</u> (quoting <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ's legal conclusions, however, are reviewed de novo. <u>Davis v. Shalala</u>, 985 F.2d 528 (11th Cir. 1993). "If

the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed." Lewis v. Berryhill, No. 2:16-CV-181-VEH, 2017 WL 1132734, at *1 (N.D. Ala. Mar. 27, 2017) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

II. THE ALJ'S FINDINGS

After consideration of the record, the ALJ made the following findings: (1) Plaintiff last met the insured status requirement of the Social Security Act on September 30, 2010 (R. 26)[1], (2) Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 3, 2009 through his date last insured of September 30, 2010 (id.), (3) through the date last insured, Plaintiff had the following severe impairment: anxiety disorder, NOS (20 CFR 404.1520(c))(id.), (4) through the date of last insured, the Plaintiff did not have an impairment or combined impairment that met a listed impairment (id.). The ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the

---

[1] The citations herein are to the record which is found at Doc. 10.

3

nonexertional limitations of avoiding ordinary hazards, performing simple routine and repetitive tasks but not at production rate pace, and could have occasional interaction with co-workers, supervisors, and the public (R. 27.) and that, through the date of last insured, Plaintiff could not perform any past relevant work (R. 34.). Accordingly, the ALJ found that Plaintiff was not under a disability at any time from October 3, 2009, the alleged onset date, through September 30, 2010, the date last insured. (R. 36.)

III. DISCUSSION

A. The ALJ's Misstatement of the GAF Score

The report and recommendation found that the misstatement by the ALJ of the Global Assessment of Functionality ("GAF") score that Dr. Eisenberg assessed Plaintiff was ultimately harmless. (Doc. 16 at 6.) In his objections, Plaintiff disagrees and argues that the misstatement of the GAF score requires a remand because "Dr. Eisenberg's opinion of serious limitation does contradict the ALJ's findings that Shannon [Plaintiff] only had mild limitations which is why he found Shannon [Plaintiff] unable to work." (Doc. 17 at 3.) Plaintiff argues that while a misstatement of facts in some cases may be harmless error because they did not affect the ALJ's ultimate conclusion, this case is not one of those. (Id. at

4

3-4). The Court agrees for the reasons that follow and declines to adopt the report and recommendation on this issue.

First, the Court notes that it is not simply the GAF score that the ALJ misstated in this case. The ALJ's decision contains numerous factual errors, such as misattributed diagnoses, GAF scores, and other information from the medical opinion evidence that was used by the ALJ to make his determination of Plaintiff's RFC. These errors raise a significant question about whether Dr. Eisenberg's opinion was considered by the ALJ.

The ALJ states that Plaintiff first presented to Gateway Behavioral Health Services ("Gateway") on August 24, 2010 and was seen by a licensed professional counselor ("LPC") (Jo L. Miller) regarding his symptoms of PTSD and bipolar disorder. (R. 30.) In that same paragraph, the ALJ goes on to state that Plaintiff then presented on September 20, 2010 with Dr. Eisenberg and that "Dr. Eisenberg noted claimant attended church and had friends and diagnosed claimant with PTSD, biplar [sic] disorder and rated claimant with a GAF score of 65, proscribing Prozac for his anxiety and antidepressant and Seroquel for anxiety/insomnia." (Id.) Elsewhere, the ALJ states again that Plaintiff was seen in August 2010 by "a medically-

acceptable source and received a diagnosis from this doctor of PTSD, bipolar [sic] disorder, and assessed a GAF score of 65 (indicating no more than 'mild' problems)." (R. 32.)

This is a misstatement of the evidence. The evidence does show that Plaintiff was first seen at Gateway by LPC Jo Miller on August 24, 2010, and was diagnosed with "PTSD and bi-polar D/O." However, Dr. Eisenberg's report diagnosed Plaintiff with PTSD and MDD, not PTSD and bipolar disorder (R. 374), assessed a GAF score of 42, not 65 (R. 374), and did not make any mention of church attendance or friendships (R. 372-375).

The report following Dr. Eisenberg's report in Exhibit B4F is the Adult Behavioral Health Assessment, which was completed by LPC Jo L. Miller. (R. 376-386.) LPC Miller assessed Plaintiff a GAF score of 65, diagnosed Plaintiff with PTSD and bipolar disorder, and noted that Plaintiff "has several friends in his church" and elsewhere describes Plaintiff's church attendance. (R. 384-385; 377; 384.) Thus, it appears to this Court that the ALJ may have inadvertently incorporated LPC Miller's report into Dr. Eisenberg's report, which resulted in the ALJ reciting evidence (the GAF score, the bipolar diagnosis, the information regarding the Plaintiff's church attendance)

from LPC Miller as coming from Dr. Eisenberg and later providing that evidence with "some weight." (R. 34.)

"It is well-established that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Comm'r Of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (internal quotations and citation omitted). The Commissioner argues that Dr. Eisenberg is not a treating physician and, therefore, his opinion is not entitled to any deference or special consideration. (Doc. 12 at 11.) It is true that Dr. Eisenberg only saw Plaintiff once and the ALJ is therefore not required to afford Dr. Eisenberg's opinion a certain weight. Crawford, 363 F.3d at 1160; McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). However, an ALJ must consider all materially relevant evidence and state with particularity the weight he gave the different medical opinions and the reasons why. Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); McCloud v. Barnhart, 166 F. App'x 410, 418 (11th Cir. 2006); see also 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). ALJs must "'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence' in the case."

7

Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(e)).

The ALJ accorded Dr. Eisenberg's evaluation "some weight to the extent it was consistent with the overall competent medical evidence of record." (R. 34.) However, it appears that the ALJ was actually providing "some weight" to the evidence of Jo L. Miller and, thus, the Court is not convinced that the ALJ properly weighed the opinion evidence of Dr. Eisenberg. "However, when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand." Tillman v. Comm'r, Soc. Sec. Admin., 559 F. App'x 975, 975 (11th Cir. 2014). Plaintiff argues that the misstatement of the GAF score cannot be harmless error because the ALJ relied on Dr. Eisenberg's opinion, at least in part, when formulating Plaintiff's RFC. This Court agrees.

Based on the record before this Court, it appears that the ALJ did consider the GAF scores to some extent when making its RFC determination. The ALJ states that the mental health assessment conducted by Ms. Musselman, a nurse practitioner at Gateway Behavioral Health Services, is afforded "some weight" and that Plaintiff's "one time GAF score in the 40s is only documented in one clinical visit with the nurse practitioner." (R. 34.) The ALJ

specifically mentioned the GAF score and his reasons for discounting it-it was rendered by a nurse practitioner, not an acceptable medical source, and "appears attributable to noncompliance with prescribed medications."[2] (R. 34.) The ALJ stated that a GAF score in the 40s was only rendered one time, but this conclusion is not supported by the medical opinion evidence-a fact that adds to this Court's concern that the ALJ did not weigh Dr. Eisenberg's actual opinion.

The ALJ also appears to rely on the GAF score of 65 in according Dr. Eisenberg's opinion "some weight." The ALJ described Dr. Eisenberg's opinion as a "one time evaluation of the claimant with only mild mental health symptoms." (R. 34.) When describing the GAF score of 65 earlier in the decision, the ALJ stated that a score of 65 "indicated no more than 'mild' problems." (R. 32.) The ALJ also included a footnote that stated that a GAF score of 65 reflects only mild symptoms. (R. 30-31.) The ALJ does not otherwise explain why Dr. Eisenberg's report indicated "mild" mental

---

[2] 20 C.F.R. § 404.1502 defines what an acceptable medical source is and was amended, effective March 27, 2017, to include Licensed Advanced Practical Registered Nurse ("APRNs"). However, for claims filed before March 27, 2017, APRNs were not considered acceptable medical sources. 20 C.F.R. § 404.1502(a)(8). Thus, at the time the ALJ rendered his decision, Ms. Musselman, an APRN at Gateway, was not considered an acceptable medical source.

health problems. The only basis for this conclusion is the GAF score that the ALJ described as indicating mild problems, which was misattributed to Dr. Eisenberg. Therefore, it appears that the ALJ did rely on the GAF scores to some extent in making his RFC determination and that, further, the ALJ's weighing of the GAF scores in making the RFC determination was materially affected by whether the score came from an accepted medical source or not.

In sum, while this Court will not invade the province of the ALJ in determining what weight to accord Dr. Eisenberg's opinion, the Court is not able to determine that the misstatement of the GAF score is harmless error because it is not clear that the ALJ weighed Dr. Eisenberg's opinion or to what extent it relied on various GAF scores in determining Plaintiff's RFC.[3] See McCloud v. Barnhart, 166 F. App'x 410, 418 (11th Cir. 2006) (finding that it could not be concluded that it was harmless error to label a GAF score of 45 as moderate when it actually reflects severe symptoms because the Court could not determine from the record what weight the ALJ placed on the

---

[3] This Court offers no opinion about what this evidence, and other similar evidence, suggests about the ultimate issue: whether Plaintiff is disabled. The Court seeks to ensure that 20 C.F.R. § 404.1527 is complied with and that all medical evidence is properly evaluated by the ALJ.

10

GAF score). As this Court cannot determine from the record that the ALJ considered Dr. Eisenberg's opinion or what weight the ALJ placed on the GAF scores in determining the RFC, the Court cannot conclude that the proper legal analysis was employed and remand is necessary. Therefore, the Court **DECLINES TO ADOPT** the Magistrate Judge's report and recommendation that the misstatement of Plaintiff's GAF score from Dr. Eisenberg is harmless error. Accordingly, this matter is **REMANDED** to the Social Security Administration for further proceedings.

## B. Plaintiff's Remaining Arguments

In regards to Plaintiff's remaining arguments, the Court agrees with the reasoning set forth in the Magistrate Judge's report and recommendation and finds Plaintiff's objections to the report and recommendation to be without merit. In response to the report and recommendation, Plaintiff argues that the ALJ did not consider a significant amount of evidence after his "date last insured that directly resulted from his trauma. Whether or not the evidence supported greater work-related limitations was for the fact-finder." (Doc. 17 at 10.) The ALJ did consider this evidence and did not err in discounting it. The ALJ stated that Plaintiff reported other symptoms "to his neurological specialist in 2014 (Exhibit B9F / 14) that

he alleges is related to his initial injuries in 2009, but this is not confirmed by consultative exam in April 2010 . . . or other competent medical evidence prior to claimant's date last insured." (R. 33.) Thus, the ALJ discounted the opinion and found that it was irrelevant to Plaintiff's RFC determination because the evidence did not state that it pertained to the disability period and was otherwise not confirmed by the medical evidence. See Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 833 (11th Cir. 2011) (finding that the ALJ properly discounted a doctor's medical opinion and RFC assessment where the assessment did not state that it pertained to the disability period and it conflicted with abundant medical evidence). Further, the fact that the ALJ did not specifically mention each opinion that was rendered post-date last insured does not require a remand on that ground. Dyer, 395 F.3d at 1211 (stating that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision). Accordingly, the Court **ADOPTS** the Magistrate Judge's report and recommendation on Plaintiff's remaining arguments.

IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge's report and recommendation is **ADOPTED IN PART**. The Court **DECLINES TO ADOPT** the Magistrate Judge's report and

recommendation that the misstatement of Plaintiff's GAF score from Dr. Eisenberg is harmless error and does not require remand. Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner is **REVERSED**, and this case is **REMANDED** for the Commissioner to reevaluate Plaintiff's RFC in light of all the evidence of record consistent with this opinion and order. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** consistent with this Order and to close this case.

SO ORDERED this 1ST day of February 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA